The Law Offices of
CURTIS, GOODWIN, SULLIVAN,
 UDALL & SCHWAB, P.L.C.
501 East Thomas Road
Phoenix, Arizona 85012-3205
Telephone (602) 393-1700

Kelly Y. Schwab, #014038
kschwab@cgsuslaw.com
Michelle Swann, #019819
mswann@cgsuslaw.com

Attorneys for Best Western International, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., an Arizona non-profit corporation,<br><br>            Plaintiff,<br><br>v.<br><br>Niagara River Hotels, Inc., a Canadian corporation, and Mangat Verma, an individual,<br><br>            Defendants. | NO. CV2008-1740-PHX-DGC<br><br>RESTATED MOTION FOR DEFAULT JUDGMENT |

Plaintiff, Best Western International, Inc. ("Best Western"), respectfully requests that this Court, pursuant to the provisions of Rule 55(b)(2), *Federal Rules of Civil Procedure*, enter judgment by default against Defendants Niagara River Hotels, Inc., a Canadian corporation, and Mangat Verma, a Canadian citizen. This Motion is supported by the following Memorandum of Points and Authorities and the Affidavit of Cheryl Pollack in Support of Motion for Default Judgment previously filed in this matter at Docket #24.

-1-

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  Introduction

    Best Western seeks the following relief:

1. On Counts I and II of the Complaint in the amount of $30,390.02, Canadian Dollars, ($24,251.24 US Dollars), plus interest thereon at the rate of 1.5% per month from and after April 1, 2009;

2. On Count III of the Complaint in the amount of $330,480.00, US Dollars;

3. On all Counts of the Complaint, for Plaintiff's reasonable attorneys' fees, costs and expenses incurred herein in the amount of $5,699.05; and

4. Any further relief that this Court deems just.

    Best Western filed its Complaint in this matter on September 24, 2008. Defendant Niagara River Hotels, Inc. was duly and properly served with the Complaint and Summons on December 12, 2008. (Dkt. #16) Defendant Mangat Verma was duly and properly served with the Complaint and Summons on January 2, 2009. (Dkt. #15). Defendants' Georgia attorney contacted Best Western's counsel on November 24, 2008 and thus was clearly aware of the lawsuit before service could be effected on these foreign Defendants. Best Western waited approximately four months before seeking a default because: (1) Defendants are Canadian and Best Western wanted to give Defendants ample time to appear and defend in a foreign country pursuant to the spirit of the Hague Conventions; and (2) Defendants' Georgia attorney was engaged in settlement discussions with Best Western's counsel since November 2008. However, despite warnings Best

Western would be forced to seek default, neither Defendant filed an answer to the Complaint or otherwise appeared to defend in this matter. On April 3, 2009, Best Western filed its Applications for Entry of Default against each Defendant (Dkt. ## 17-18) and mailed a copy directly to each Defendant by international mail. Additionally, courtesy copies of the Applications for Entry of Default were emailed to Defendants' Georgia counsel. *See* email dated April 3, 2009, attached hereto as Exhibit 1. The Clerk of the Court entered default against each Defendant on April 6, 2009. (Dkt. ## 19-20).

II.     Factual Background

This case involves a contract dispute between Best Western and Defendants, who used to own and operate a Best Western-member hotel. Here, Defendants owned and operated the hotel formerly known as the Best Western Fireside Hotel, located in Niagara Falls, Ontario, Canada. (Complaint, ¶ 24). Defendant Niagara River Hotels, Inc., through its agent Mangat Verma, executed a Membership Application and Agreement ("Membership Agreement") with Best Western on July 17, 2006 and obtained a Best Western membership for that hotel. (Complaint, ¶ 21). The rights and obligations of Best Western's members are determined by the membership and are set forth in the Membership Agreement, its Bylaws, and Rules and Regulations as established from time to time by Best Western's members. (Complaint, ¶ 8).

Upon becoming members, Defendants agreed to timely pay all fees, dues, charges, and assessments imposed generally on the membership by the board of Best Western and to promptly pay the costs of all goods or services provided by or ordered through Best Western. (Complaint, ¶ 23; Membership Agreement at ¶ 12, attached hereto as Exhibit 2).

Additionally, Defendants further agreed that past due amounts would bear interest at the rate of one and one-half percent (1.5%) per month from the date due until paid, provided that such interest charges would in no way authorize or excuse late payments or limit Best Western's rights and remedies against them. (Complaint, ¶ 23; Membership Agreement at ¶ 12, attached hereto as Exhibit 2). The Best Western Board of Directors may terminate the membership upon default by a member of certain of its obligations to Best Western, including obligations set forth in the Membership Agreement, the Bylaws and the Rules and Regulations. (Complaint, ¶ 19; Membership Agreement at ¶ 18, attached hereto as Exhibit 2.)

As set forth in Best Western's Complaint, Best Western owns and licenses the mark of Best Western in connection with the hotel industry. (Complaint ¶¶ 12, 13, 14, 15). Under the terms of the Membership Agreement, Defendants were granted the use of a non-exclusive license to use the Best Western name and trademarks on the condition that such license would terminate if the Defendants' membership was ever terminated. (Complaint, ¶¶ 10, 25, 27; Membership Agreement at ¶¶ 1, 19-26, attached hereto as Exhibit 2).

On June 17, 2008, Defendants' Best Western membership terminated because of their failure to comply with Best Western quality and design requirements. (Complaint, ¶ 29). Termination of the membership results in termination of the Best Western license. (Complaint, ¶ 27). Specifically, within fifteen days following membership termination, the former member must cease and desist from using, and remove from public view, all Best Western marks and all references to Best Western. (Complaint, ¶¶ 20, 27, 28; Membership Agreement at ¶ 22, attached hereto as Exhibit 2).

On July 15, 2008, thirteen days after the date Defendants were required to cease using Best Western marks and references, a Best Western representative photographed signs and collateral items at the Hotel which displayed Best Western marks. The photographs showed that the Defendants failed to remove signage and items (e.g., guest directories, laundry bags, cups, ice buckets, message pads, non-smoking signs, phone face plates) containing the Best Western marks. (Complaint, ¶ 30; Affidavit of Cheryl Pollack in Support of Motion for Default Judgment at ¶ 10, Dkt #24).

On July 31, 2008, Best Western demanded that Defendants pay the open account balance due to Best Western; cease and desist from using the Best Western name, signs and logos; remove all listings of the Hotel on websites/Internet under the Best Western name and to disclose the use/registration of any domain names that comprise any of the Best Western marks; and transfer ownership of Best Western domain names to Best Western. (Complaint, ¶¶ 31, 32). Best Western received no response to that letter, which prompted the present lawsuit filed on September 24, 2008.

Despite notification of the termination of Defendants' membership and this lawsuit, Defendants' continued to use the Best Western name and trademarks for their Hotel property. (Affidavit of Cheryl Pollack in Support of Motion for Default Judgment at ¶¶ 10, 11, Dkt #24). Defendants also continued to use the Best Western name and trademarks on the internet; specifically, the Defendants wrongfully continued to use the domain www.niagarabestwestern.com and Best Western's copyrighted website format. (Affidavit of Cheryl Pollack in Support of Motion for Default Judgment at ¶ 11, Dkt. #24). Best Western holds a federal copyright registration for Bestwestern.com website 2006,

registration number VA1364349, attached hereto as Exhibit 3, as well as multiple USPTO Service Mark Registrations for Best Western marks, attached hereto as Exhibit 4.  Not only did Defendants use the www.niagarabestwestern.com address to automatically redirect traffic to www.niagaraqualityhotel.com, the Defendants' copied Best Western's website format, which as noted above, is copyrighted.  *See* copy of www.niagarabestwestern.com website dated September 10, 2008, attached hereto as Exhibit 5 and copy of Best Western's main webpage, attached hereto as Exhibit 6.

The Membership Agreement provides that if a former member violates the non-exclusive license and continues to use Best Western trademarks beyond the fifteen day grace period, then the offending party shall be assessed liquidated damages equal to fifteen percent of the property's room rates per day, multiplied by the total number of rooms at the property for every day of a violation.  (Complaint, ¶ 51; Membership Agreement at ¶ 24, attached hereto as Exhibit 2; and Affidavit of Cheryl Pollack in Support of Motion for Default Judgment at ¶¶ 13, 14, 15, Dkt. #24).

In January 2009, Defendants' Georgia attorney provided photographs dated November 4, 2008, via email, evidencing the replacement of signage on the Hotel property.  (Affidavit of Cheryl Pollack in Support of Motion for Default Judgment, Exhibit C, Dkt. #24-4).

However, Best Western was not able to resolve the trademark infringement of the website/domain name until the end of January, 2009, after Best Western discovered that the Hotel had been sold in December, 2008.  Once Best Western learned of the sale of the Hotel, the new owners were contacted and advised of the trademark infringement of the

website/domain name.  The new owners immediately took the necessary steps to work with Best Western to resolve the trademark infringement.  (*See* Emails dated January 26, 2009 and January 30, 2009, attached hereto as Exhibit 7; Affidavit of Cheryl Pollack in Support of Motion for Default Judgment at ¶¶ 12, Dkt. #24).  Best Western does not seek liquidated damages for the website trademark violation that occurred <u>after</u> Defendants sold the Hotel on December 19, 2008.

III.     Best Western is Entitled to a Default Judgment

Fed.R.Civ.P. 55 states that when the party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the Clerk shall enter the party's default.  Pursuant to this Rule, the Clerk of the Court entered a default against both Defendants on April 6, 2009.  These entries of default are proper given the undisputed timeline of events set forth above.

Once a default has been entered, Plaintiff may apply to the Court for a default judgment. Fed.R.Ci.P. 55(b).  "After default has been entered by the Clerk of the Court, the factual allegations of the complaint are taken as true, except for those allegations relating to damages." *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).  By failing to refute the allegations in the complaint, Defendants have admitted those averments under Fed.R.Civ.P. 8(d), and this Court must accept those allegations as true. Now, this Court, in considering whether to grant a motion for default judgment, may consider the following factors:  (1) the possibility of prejudice to the plaintiff, (2) the merits of Plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6)

whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Here, all seven of these factors favor the entry of a default judgment.

     A.     <u>The Merits of the Best Western's Substantive Claim and the Sufficiency of the Complaint</u>

Factors two and three require an analysis of Best Western's claims and the sufficiency of the Complaint. In its Complaint, Best Western alleges breach of contract, federal trademark infringement and unfair competition under the Trademark Act of 1946 (as amended) and the related common laws and Arizona statutory causes of action arising from Defendants' refusal to cease use of Best Western's name and trademarks.

Section 1114 of the Lanham Act states that:

> Any person who shall, without the consent of the registrant – use in commerce any reproductions, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising or any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive …

15 U.S.C.§ 1114. Further, A.R.S. § 44-1451 states that:

> [T]he owner of a mark registered under this article may proceed by civil action against any person who, without the consent of the registrant:
> 1. Uses in this state the registered mark or a mark similar to the registered mark on or in connection with any goods or services or any container for goods in any manner that is likely to cause confusion, cause a mistake or deceive a person as to either:
> (a) The affiliation, connection or association of the person with another person.
> (b) The origin, sponsorship or approval of the goods, services or commercial activities by the owner of the registered mark.

A.R.S. § 44-1451. Further, A.R.S. § 44-1448.01 states, in relevant part, that:

> A. The owner of a that is famous in this state shall be entitled, subject to the principles of equity and on terms as the court deems reasonable, to an injunction against another person's commercial use of a mark or trade name, if the use begins after the mark has become famous and causes dilution of the distinctive quality of the mark and to obtain other relief provided in this section.

A.R.S. § 44-1448.01.

A prevailing plaintiff under either the Lanham Act or Arizona's Trademark Act is entitled to injunctive relief, damages, defendant's profits, and costs. *See* 15 U.S.C. § 1116; 15 U.S.C. § 1117; A.R.S. § 44-1451.

To prevail on an infringement claim, a plaintiff must show that: 1) it has a valid, protectable right; and 2) that defendant's use of the mark is likely to cause confusion. *See Applied Information Sciences Corp. v. Ebay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).[1] Through its federal and state trademark registrations as well as its longstanding use of the Best Western mark and variations thereof, Best Western has shown it has valid, protectable rights in the Best Western mark. (Complaint, ¶¶ 12-16; Exhibits 3 and 4 attached hereto).

The Membership Agreement states:

> 22. This license shall terminate upon termination of Applicant's Membership Agreement. Within fifteen (15) days of license termination, Applicant shall remove from public view and cease using all Best Western Symbols. This prohibition includes any representation, directly or indirectly that the Hotel was formerly affiliated with Best Western. Furthermore, Applicant shall actively take such steps as may be necessary to cause the cessation of all advertising and

---

[1] All Plaintiffs' infringement claims are subject to the same likelihood of confusion test. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008); *Lininger v. Desert Lodge*, 63 Ariz. 239 (1945).

> distribution of promotional material containing any Best Western Symbol.
>
> 23. Upon termination of this License Agreement, Applicant agrees not to use anything consisting of or incorporating any one or more words, letters, designs or devices which contain any part of any Best Western Symbol, or which singly or together are similar in spelling, sound, appearance or otherwise to any Best Western Symbol.

Membership Agreement at ¶¶ 22, 23, attached hereto as Exhibit 2. Notwithstanding that clear and unequivocal direction that a member must cease using Best Western trademarks sixteen days after membership termination, Defendants continued to wrongfully use the protected marks until they sold the Hotel in December, 2008.

Moreover, Defendants' continued use of Best Western signs and incidentals (e.g., cups, ice buckets, message pads, laundry bags) after its termination as a member likely caused confusion as to the source of their services. (Complaint ¶ 30). The Defendants' knowingly and intentionally continued to use the Best Western marks after its termination as a member, despite the terms of the Membership Agreement requiring Defendants to remove any and all marks from their hotel property, to reap the benefits of Best Western's goodwill. (Complaint ¶ ¶30, 34; Affidavit of Cheryl Pollack in Support of Motion for Default Judgment, ¶¶ 10, 11, Dkt. #24). Therefore, the merits to Best Western's claims are strong and the Complaint sufficiently sets forth those claims.

B. <u>The Amount of Money at Stake</u>

As for the fourth factor, Defendants failed to pay Best Western amounts due and owing as required by the Membership Agreement. As of September 1, 2008, there remained due and owing by Defendants to Best Western, for certain fees and other charges

imposed on Defendants as Best Western members, including services and supplies that Best Western provided on an open account, the sum of $26,458.09 Canadian Dollars ($25,869.93 US Dollars), including interest.  (Complaint, ¶¶ 36, 41, 44, 45).  Pursuant to the express terms of the Membership Agreement, interest has accrued and continues to accrue on this sum at the rate of one and one-half percent (1.5%) per month until paid in full.  (Complaint, ¶¶ 40, 46; Membership Agreement at ¶ 12, attached hereto as Exhibit 2). As of April 1, 2008, Defendants owed $30,390.02 Canadian Dollars ($24,251.24 US Dollars), including interest.  (Affidavit of Cheryl Pollack in Support of Motion for Default Judgment at ¶ 7, Dkt. #24).

Further, this District has already found Best Western's Membership Agreement's liquidated damages formula reasonable for use when a former member refuses to discontinue use of Best Western service marks, and there is no reason not to use the formula here. *See Best Western International, Inc. v. Oasis Investments, L.P.*, 398 F.Supp.2d 1075, 1081 (D. Ariz. 2005).  Indeed, Defendants cannot reasonably dispute the information used to arrive at the amount of liquidated damages applicable here. Specifically, *Defendants* provided to Best Western information concerning Defendants' room rates and number of rooms for publication in Best Western's 2008 Best Western Travel Guide.  (Affidavit of Cheryl Pollack in Support of Motion for Default Judgment, ¶ 13, Dkt. #24).

The Membership Agreement's liquidated damages formula requires one to add up all of the room rates as listed in the 2008 Best Western Travel Guide which are as follows: Rates for 1 person and 2 persons for various seasons:  $59-169, $59-199, $99-269, $69-

-11-

199, $59-169, $59-169, $59-199, $99-269, $69-199, $59-169.  Adding each number together, as required by the formula, the total is $2,700, which is then divided by the number of room rates (20), for a total of $135.  The $135 is then multiplied by the total number of rooms which is 96 (again, total number of rooms was taken from information provided by the Defendants for the 2008 Best Western Travel Guide), for a result of $12,960.  $12,960 is then multiplied by 15%, with a resulting total of $1,944 *per* day for each day there exists a violation.  (Complaint, ¶ 52[2]; Affidavit of Cheryl Pollack in Support of Motion for Default Judgment, ¶¶ 13, 14, Dkt. #24).  The Defendants continued to use Best Western's trademarks at the Hotel and on their website for a total of 170 days.  (The total number of days was calculated beginning on July 3, 2008, the sixteenth day following membership termination, and ending on December 19, 2008, the date the Hotel was sold.)  Applying the formula to the number of days Defendants' were in violation of the parties' Membership Agreement (July 3, 2008 through the date they sold the Hotel, December 19, 2008), Defendants owe liquidated damages in the amount of $330,480.00 ($1,944 multiplied by 170 days).

The evidence to support the beginning and ending dates of July 3, 2008 and December 19, 2008, respectively, as used in the calculation for liquidated damages is:  (1) Notice of Termination letter dated June 17, 2008 (Exhibit 2 to Complaint); (2) Logo Infringement Report dated July 15, 2008 (Exhibit B to Affidavit of Cheryl Pollack in

---

[2] Paragraph 52 of the Complaint incorrectly states that June 17, 2008 is the beginning date from which Defendants owe $1,944 per day for each day they were unlawfully using the Best Western marks.  June 17, 2008 is actually the date the Defendants' membership was terminated.  The correct beginning date from which the Defendants owe $1,944 per day is July 3, 2008, and July 3, 2008 is the date used in the calculations set forth in this Motion.

Support of Motion for Default Judgment, Dkt. #24-3); (3) Cease and Desist Letter dated July 31, 2008 (Exhibit 3 to Complaint); (4) www.niagarabestwestern.com website dated September 10, 2008, attached hereto as Exhibit 5; (5) Email dated January 13, 2009 from Defendants' Georgia attorney with pictures dated November 4, 2008 of replaced signage on hotel property (Exhibit C to Affidavit of Cheryl Pollack in Support of Motion for Default Judgment, Dkt. #24-4); (6) Email received from Defendants' Georgia attorney with transfer documents dated December 19, 2008 evidencing the sale of the hotel (Exhibit D to Affidavit of Cheryl Pollack in Support of Motion for Default Judgment, Dkt. #24-4); and (7) Emails dated January 26, 2009 and January 30, 2009 evidencing the resolution of the trademark infringement of the website/domain name, attached hereto as Exhibit 7.  As previously stated, Best Western does not seek liquidated damages for the website trademark violations that occurred <u>after</u> Defendants sold the Hotel.

Injunctive relief is no longer sought as it was when the Complaint was filed because the trademark violations have been resolved (through the Hotel's new owner).[3]

C. The Remaining Factors

In this case, factors one, five, six and seven are satisfied.

Under factor one, Best Western will be prejudiced if default is not granted because it would be deprived of its day in court which is the only avenue Best Western has to collect the amounts Defendants' owe to it.  This lawsuit is the only means by which Best Western has to establish Defendants' breach of contract and failure to pay the open account

---

[3] *See* Exhibit 3, attached hereto – email dated January 30, 2009 advising that website finally changed.

because Defendants have ignored Best Western's pre-suit demand for payment and post-suit settlement discussions have broken down.  Also, because the Court must accept the allegations in the Complaint as true, Best Western has shown that the infringing use of its Best Western mark has harmed Best Western and their rights to that mark.  *See Allergen, Inc. v. Mira Life Group, Inc.*, 2004 WL 2734822 (C.D. Cal.).  This lawsuit is the only means by which Best Western may recover the liquidated damages owed to it because of Defendants trademark infringement, and Defendants expressly agreed to litigate any dispute in this Court.  (Complaint ¶¶ 6, 7; Membership Agreement, ¶¶ 37, 38, attached hereto as Exhibit 2.)

With respect to factors five and six, because the Defendants have not filed any pleadings in this case, there is no evidence that there is a dispute concerning material facts or that default was due to excusable neglect.  *Id.*  Indeed, Defendants and their Georgia counsel had ample opportunity (seven months' notice) to challenge the Complaint, and seven weeks to challenge the entry of default, and they have done nothing.  *See* Email dated April 15, 2009, attached hereto as Exhibit 8.  Finally, as to factor seven, in a case such as this, the policy favoring decisions on the merits does not justify the denial of a default judgment.  *Id.* ("Under Fed R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

Accordingly, all seven factors support the entry of a default judgment in this case.

IV.     Attorney's Fees and Costs

The Best Western Membership Agreement provides, at paragraph 36, that in the event defendant breaches any obligation of the Membership Agreement, defendant "is

liable to Best Western for all attorney's fees, costs and expenses incurred by Best Western in connection with the breach or violation." (Membership Agreement at ¶36, attached hereto as Exhibit 2. The Membership Agreement is governed by Arizona law. (Membership Agreement at ¶ 37, attached hereto as Exhibit 2). Under Arizona law, where a prevailing party's contract calls for payment of "all" attorney's fees and costs, the court must award all fees and costs as long as the fees are facially reasonable. *See McDowell Mountain Ranch Community Ass'n, Inc. v. Simons*, 216 Ariz. 266, ¶ 21 (App. 2007). Accordingly, an award of attorneys' fees and costs is just.

V.     Conclusion

For the reasons set forth above, Plaintiff respectfully requests that this Court enter a default judgment herein against Defendants Niagara River Hotels, Inc., a Canadian corporation; and Mangat Verma, an individual, and each of them, as follows:

1. On Counts I and II of the Complaint in the amount of $30,390.02, Canadian Dollars, ($24,251.24 US Dollars), plus interest thereon at the rate of 1.5% per month from and after April 1, 2009;

2. On Count III of the Complaint in the amount of $330,480.00, US Dollars;

3. On all Counts of the Complaint, for Plaintiff's reasonable attorneys' fees, costs and expenses incurred herein in the amount of $5,699.05 US Dollars; and

4. Any further relief that this Court deems just.

IN THE ALTERNATIVE, Plaintiff respectfully requests that this court enter default judgment against the Defendants and issue an Order scheduling a hearing to determine the

amount of damages sustained by Plaintiff as a result of Defendants' actions, as well as all other remedies available to Plaintiffs under the Lanham Act, 15 U.S.C. § 1117, including attorneys' fees.

DATED this 29th day of May, 2009.

CURTIS, GOODWIN, SULLIVAN,
UDALL & SCHWAB, P.L.C.


By  s/Michelle Swann
   Kelly Y. Schwab
   Michelle Swann
   501 East Thomas Road
   Phoenix, Arizona 85012-3205
   Attorneys for Plaintiff

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2009, I electronically transmitted the attached Plaintiff's Restated Motion for Default Judgment to the Clerk's Office of the United States District Court for the District of Arizona, using the CM/ECF System for filing and I served copies of the same by first class international mail, on the following, whose registration status is unknown:

> Niagara River Hotels, Inc., a Canadian corporation
> 8054 Lundy's Lane
> Niagara Falls, Ontario, Canada  L2H 1H1
>
> Mr. Mangat Verma
> 8054 Lundy's Lane
> Niagara Falls, Ontario, Canada  L2H 1H1

s/Cindy Barton

F:\1867\-4 v. Niagara River Hotels - Mangat Verma (Fireside Hotel)\Pleadings\Restated Motion for Default Judgment.doc